Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/16/2018 09:12 AM CST

State of Nebraska, appellee, v.
Jeremy D. Foster, appellant.
___ N.W.2d ___

Filed August 24, 2018.    No. S-17-707.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals
   from postconviction proceedings, an appellate court reviews de novo a
   determination that the defendant failed to allege sufficient facts to dem-
   onstrate a violation of his or her constitutional rights or that the record
   and files affirmatively show that the defendant is entitled to no relief.
2. **Jury Instructions: Appeal and Error.** Whether jury instructions are
   correct is a question of law, which an appellate court resolves indepen-
   dently of the lower court's decision.
3. **Postconviction.** Postconviction relief is a very narrow category of relief.
4. **Postconviction: Constitutional Law: Proof.** In order to be entitled to
   an evidentiary hearing, a prisoner must allege facts in the motion for
   postconviction relief that, if proved, would constitute a violation of his
   or her rights under the U.S. or Nebraska Constitution.
5. **Postconviction.** A prisoner is not entitled to an evidentiary hearing on a
   motion for postconviction relief on the basis of claims that present only
   conclusory statements of law or fact.
6. ____. In the absence of alleged facts that would render the judgment
   void or voidable, the proper course is to dismiss the motion for postcon-
   viction relief for failure to state a claim.
7. **Postconviction: Effectiveness of Counsel: Proof: Appeal and Error.**
   To establish a right to postconviction relief because of counsel's inef-
   fective assistance, the defendant has the burden, in accordance with
   *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.
   2d 674 (1984), to show that counsel's performance was deficient; that
   is, counsel's performance did not equal that of a lawyer with ordinary
   training and skill in criminal law. Next, the defendant must show
   that counsel's deficient performance prejudiced the defense in his or
   her case.

8. **Effectiveness of Counsel: Proof.** To establish the prejudice prong of a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

9. **Effectiveness of Counsel: Presumptions.** In determining whether trial counsel's performance was deficient, courts give counsel's acts a strong presumption of reasonableness.

10. **Effectiveness of Counsel: Appeal and Error.** An appellate court will not judge an ineffectiveness of counsel claim in hindsight; appellate courts must assess trial counsel's performance from counsel's perspective when counsel provided the assistance.

11. ____: ____. When reviewing claims of ineffective assistance, an appellate court will not second-guess trial counsel's reasonable strategic decisions.

12. **Right to Counsel: Plea Bargains.** The plea-bargaining process presents a critical stage of a criminal prosecution to which the right to counsel applies.

13. **Effectiveness of Counsel: Plea Bargains.** As a general rule, defense counsel has the duty to communicate to the defendant all formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the defendant.

14. **Verdicts: Juries: Jury Instructions: Presumptions.** Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.

15. **Jury Instructions: Appeal and Error.** In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.

16. ____: ____. All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.

17. **Criminal Law: Motions for Mistrial.** A motion for mistrial is properly granted in a criminal case where an event occurs during the course of trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

18. **Motions for Mistrial: Proof: Appeal and Error.** A defendant must prove that an alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice, in order for a motion for mistrial to be properly granted.

19. **Effectiveness of Counsel: Appeal and Error.** When a claim of ineffective assistance of appellate counsel is based on the failure to raise

a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the two-part test for ineffectiveness established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); if trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue.

20. \_\_\_\_: \_\_\_\_. Much like claims of ineffective assistance of trial counsel, a defendant claiming ineffective assistance of appellate counsel must show that but for appellate counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different.

21. **Witnesses: Impeachment.** Generally, the credibility of a witness may be attacked by any party, including the party who called the witness.

22. \_\_\_\_: \_\_\_\_. A party may not use a prior inconsistent statement of a witness under the guise of impeachment for the primary purpose of placing before the jury substantive evidence which is not otherwise admissible.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

Jeremy D. Foster, pro se.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Miller-Lerman, Cassel, Stacy, and Funke, JJ., and Strong, District Judge.

Funke, J.

Jeremy D. Foster appeals from the denial of postconviction relief without an evidentiary hearing. Foster asserts that he was prejudiced by ineffective assistance of counsel at trial and on direct appeal. We affirm the judgment below.

## I. BACKGROUND

This appeal follows our decision on Foster's direct appeal in *State v. Foster*,[1] which affirmed Foster's jury trial convictions on one count of first degree murder, four counts

---

[1] *State v. Foster*, 286 Neb. 826, 839 N.W.2d 783 (2013).

of assault in the second degree, and five counts of use of a deadly weapon to commit a felony. Foster and his codefendant, Darrin D. Smith, were charged with the same crimes. The two cases were jointly tried, and the jury found Smith and Foster guilty on all counts. The court sentenced both Smith and Foster to life imprisonment, plus consecutive sentences totaling 96 to 150 years.

### 1. Factual Background

Brothers Victor Henderson and Corey Henderson were members of the "Pleasantview" or "PMC" gang in Omaha, Nebraska, and Smith was a member of a rival gang referred to as "40th Avenue." Victor and Corey were federally indicted, and they agreed to plead guilty and testify for the government in exchange for leniency. They were released from federal prison in 2007, and they were considered "snitches" within the gang community.

In October 2008, Smith saw Victor and Corey at a party and made a derogatory remark toward Corey regarding being a "snitch." Later that month, Smith saw Victor and Corey at an American Legion hall in Omaha (the Legion), which was considered a bar for the "Pleasantview" gang. When Corey walked outside, he saw a group of men had surrounded Victor, including Smith, "Don Don" Swift, and a boy of about 14 years of age, who each had a gun. "Don Don" was arguing with Victor. Smith made another statement to the effect of "we don't mess with your kind," which Corey understood to be a comment about Victor and Corey being "snitches."

On November 9, 2008, while Victor and Corey were at the Legion, Smith and Foster entered the bar wearing hooded sweatshirts. Corey testified that Smith gave him a "hateful look or a stare." Smith and Foster were in the Legion for approximately 10 minutes, but before they left, they looked and nodded toward Victor and Corey. Around closing time, Smith and Foster returned and confronted Victor and Corey in the parking lot. Victor was fatally shot in the neck, and Corey and three others were wounded.

Smith and Foster were arrested and charged for the shootings. The evidence was in conflict as to whether Smith or Foster was the shooter. For example, there was evidence that Smith wore a black hooded sweatshirt and that Foster wore a gray hooded sweatshirt when they were first at the Legion, but had switched shirts before they confronted Victor and Corey in the parking lot. Witnesses testified the shooter was wearing black clothes with a hood pulled over his face. At least two witnesses implicated Foster as the shooter, another witness claimed Smith was the shooter, and there was evidence that the shooter was neither Foster nor Smith but was yet a third individual, including "Don Don" or a person named "Views."

The State's theory of prosecution at trial was that Foster was the shooter and that Smith aided and abetted Foster in the commission of the shootings. The State called several witnesses to establish that Smith was seen with a gun and that he handed Foster the gun just prior to the shootings.

Following a 2-week jury trial, Smith and Foster were convicted on all counts. Both parties appealed, and this court issued separate opinions affirming their convictions and sentences.[2]

## 2. Procedural Background

Our opinion on direct appeal in *Foster*[3] addressed Foster's assignments that the district court erred by failing to sever Foster's trial from Smith's, which was the main focus of the appeal, and allowing the jury to separate without Foster's intelligent waiver of his right to sequester.

This court rejected Foster's claim that he was prejudiced by the joint trial, reasoning that based upon the evidence, the jury could have convicted both Smith and Foster, just one of them, or neither of them. Furthermore, we determined that a joint trial was appropriate, because the charges against Smith

---

[2] See, *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013); *Foster, supra* note 1.

[3] *Foster, supra* note 1.

and Foster stemmed from the same series of acts and would be proved by similar evidence.

We also rejected Foster's second assignment of error, because the trial court specifically asked Foster whether he sought jury sequestration and he replied that he did not, which satisfied the requirement for a voluntary, knowing, and intelligent waiver of the right to sequester.

Relevant to the instant appeal, Foster then filed a motion for postconviction relief, with the assistance of court-appointed counsel. Foster's motion raised claims of trial court error, prosecutorial misconduct, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel.

The district court found that Foster's claims of trial court error and prosecutorial misconduct could have been raised on direct appeal and therefore were procedurally barred. The court found Foster's ineffective assistance of counsel claims were not procedurally barred, because he was represented by the same counsel at trial and on direct appeal. The court then addressed the allegations supporting Foster's ineffective assistance of counsel claims and found that they were not specific enough to merit a hearing and that Foster had not pointed to any facts which showed he was prejudiced.

In this appeal, Foster proceeds as a self-represented litigant and reasserts his ineffective assistance of counsel claims, and he argues the court erred in failing to grant him an evidentiary hearing.

## II. ASSIGNMENTS OF ERROR

Foster assigns, restated and reordered, that the district court erred in (1) failing to find trial counsel deficiency violated article I, § 11, of the Nebraska Constitution and the Sixth Amendment to the U.S. Constitution; (2) failing to grant Foster postconviction relief; (3) failing to find Foster was prejudiced by performance of trial counsel; (4) failing to find Foster was prejudiced by performance of appellate counsel; and (5) denying Foster an evidentiary hearing.

## III. STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[4]

[2] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.[5]

## IV. ANALYSIS

[3] Under the Nebraska Postconviction Act,[6] a prisoner in custody may file a petition for relief on the grounds that there was a denial or infringement of the prisoner's constitutional rights that would render the judgment void or voidable. This category of relief is "very narrow."[7]

[4-6] Section 29-3001(2) entitles a prisoner to an evidentiary hearing on the claim, unless "the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief." In order to be entitled to an evidentiary hearing, a prisoner must allege facts in the motion for postconviction relief that, if proved, would constitute a violation of his or her rights under the U.S. or Nebraska Constitution.[8] A prisoner is not entitled to an evidentiary hearing on the basis of claims that present only conclusory statements of law or fact.[9] In the absence of alleged facts that would render the judgment void or voidable, the proper course is to dismiss the motion for postconviction relief for failure to state a claim.[10]

---

[4] *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018).

[5] *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017).

[6] Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 2016).

[7] *State v. Haynes*, 299 Neb. 249, 260, 908 N.W.2d 40, 51 (2018).

[8] *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016).

[9] *Id.*

[10] See *State v. Ryan*, 287 Neb. 938, 845 N.W.2d 287 (2014).

All of Foster's allegations in this appeal are grounded in claims of ineffective assistance of counsel. The district court correctly noted that because Foster was represented at trial and on direct appeal by the same counsel, his first opportunity to assert ineffective assistance of counsel claims was in his motion for postconviction relief.[11]

[7,8] To establish a right to postconviction relief because of counsel's ineffective assistance, the defendant has the burden, in accordance with *Strickland v. Washington*,[12] to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[13] Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.[14] To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[15] A court may address the two prongs of this test, deficient performance and prejudice, in either order.[16]

In his brief, Foster raised four arguments: (1) The district court abused its discretion in failing to find trial counsel was deficient and prejudicial, (2) the district court erred in failing to grant postconviction relief, (3) the district court erred when it failed to find that trial and appellate counsel were prejudicially ineffective, and (4) the district court abused its discretion in denying Foster an evidentiary hearing under § 29-3001. However, based on the contents of Foster's appellate brief and his motion before the trial court, these arguments can be narrowed to the following: (1) Trial counsel's performance

---

[11] See *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017).

[12] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[13] *Schwaderer, supra* note 5.

[14] *Id.*

[15] *Id.*

[16] *Id.*

was deficient, and counsel's deficient performance prejudiced the defense in the case; (2) appellate counsel's performance was deficient, and counsel's deficient performance prejudiced Foster in the appeal; and (3) the district court erred in denying Foster an evidentiary hearing.

We discuss each of the reframed arguments in turn and explain why the district court did not err in denying Foster an evidentiary hearing. Our discussion of Foster's several arguments includes a common theme that these postconviction allegations are lacking and, even accepting them as true, fail to establish that his rights were violated.

## 1. Ineffective Assistance of Trial Counsel

Foster alleged several claims of ineffective assistance of trial counsel. Specifically, he claimed that counsel was ineffective for (a) failing to investigate, interview, and/or call to testify specific witnesses; (b) failing to communicate Foster's acceptance of the State's plea offer before the expiration of the offer; (c) failing to provide identifying characteristics of other potential shooters; (d) failing to provide alternative theories for the murder; (e) failing to object to comments made by the State; (f) failing to object when the court gave the jury a limiting instruction regarding impeachment evidence during Foster's cross-examination and failing to request a limiting instruction for each time the State impeached a witness with prior inconsistent statements; (g) failing to properly preserve error and argument when counsel failed to object to evidence and testimony that would have been potentially inadmissible in a separate trial pursuant to Foster's overruled motion to sever; (h) failing to object when the State improperly impeached its own witnesses; (i) failing to object to jury instruction No. 9, which failed to conform to the language of NJI2d Crim. 1.2 and 9.2, or propose an appropriate jury instruction which appropriately defined Foster's presumption of innocence; (j) failing to request or ensure that the court gave a "mere presence" instruction to

the jury; and (k) failing to move for a mistrial regarding any of these errors.

[9-11] In determining whether trial counsel's performance was deficient, courts give counsel's acts a strong presumption of reasonableness.[17] An appellate court will not judge an ineffectiveness of counsel claim in hindsight.[18] We must assess trial counsel's performance from counsel's perspective when counsel provided the assistance.[19] When reviewing claims of ineffective assistance, we will not second-guess trial counsel's reasonable strategic decisions.[20]

### (a) Failure to Call Witnesses

In assessing postconviction claims that trial counsel was ineffective in failing to call a particular witness, we have upheld dismissal without an evidentiary hearing where the motion did not include specific allegations regarding the testimony which the witness would have given if called.[21] The record in this matter shows the State called 24 witnesses. Foster did not testify or call any witnesses; he built his case through cross-examination of the State's witnesses.

Foster alleged that his trial counsel was deficient for failing to interview or call potential witnesses. It appears that Foster's trial counsel made the strategic choice to focus on the State's witnesses and to not call any witnesses.

In his motion to the trial court, Foster named five specific individuals that he believes should have been interviewed or called to testify and gave a brief comment about each individual. He alleges the following witnesses would have supported his defense: Kayiona Smith was present with Smith

---

[17] See, *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018); *State v. Alfredson*, 287 Neb. 477, 842 N.W.2d 815 (2014).

[18] *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011).

[19] *Id.*

[20] *Id.*

[21] *State v. McGhee*, 280 Neb. 558, 787 N.W.2d 700 (2010); *State v. Davlin*, 277 Neb. 972, 766 N.W.2d 370 (2009).

prior to the shootings, but did not make any incriminating statements against Foster; Terrance Ammons, whose telephone number was wrongly attributed to Foster at the time of the incident; Brittany Lawson was Foster's girlfriend and was with him prior to the incident; Michelle Baker is Foster's mother and was present with him prior to the incident; and Tony Mays is Foster's stepfather and was present with him prior to the shootings.

Our case law is clear that in a motion for postconviction relief, a defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing.[22] Absent specific allegations, a motion for postconviction relief effectively becomes a discovery motion to determine whether evidence favorable to a defendant's position actually exists.[23] Foster's vague descriptions of witness testimony do not merit an evidentiary hearing, because they fail to allege facts that, if proved, would constitute a violation of his rights.

The jury heard from a number of eyewitnesses who provided their individual accounts of the shootings. Foster did not explain how the testimony of the witnesses identified in his motion would have affected the evidence that was already presented at trial. Foster failed to show a reasonable probability that the outcome of trial would have been different had trial counsel interviewed or called these witnesses to testify. This claim of deficiency by trial counsel is without merit.

### (b) Failure to Communicate Acceptance of Plea Offer

Foster alleged that his trial counsel failed to communicate his acceptance of the State's plea offer before the offer expired and that Foster would have received the benefits of "the plea offer" but for his counsel's error. The trial court determined

---

[22] See *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014).

[23] See *id*.

that Foster's allegation did not merit a hearing, because he failed to allege any details about the plea offer.

[12,13] The plea-bargaining process presents a critical stage of a criminal prosecution to which the right to counsel applies.[24] As a general rule, defense counsel has the duty to communicate to the defendant all formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the defendant.[25] However, as the trial court determined, because Foster did not allege the terms of the plea offer and its benefits as compared to the outcome at trial, his allegations are insufficient to merit a hearing. This claim of deficiency by trial counsel is without merit.

### (c) Failing to Provide Identifying Characteristics of Other Potential Shooters

Foster alleged that trial counsel failed to offer any identifying characteristics of "other" shooters. It is true that several witnesses provided the jury a physical description of Foster, including several witnesses who testified that they saw Smith enter the Legion with a man matching Foster's description (light skin, braids, and walked with a limp).

However, Foster was not the only potential shooter described to the jury. There was evidence that "Don Don" and "Views" could have been the shooter. Corey described "Don Don" as 5 feet 7 inches tall with a "brush cut," darker skin, and a missing eye, and as "real distinctive 'cause he can't see out that eye." He described "Views" as 6 feet 1 inch or 6 feet 2 inches tall with "medium length dreads" and "teeth [with] silver chrome caps." Thus, the record disproves Foster's claim that the jury was not made aware of the "identifying characteristics" of other potential shooters. This claim is without merit.

---

[24] *Alfredson, supra* note 17.

[25] *Id.*

### (d) Failure to Provide
### Alternative Theories

Foster alleged that trial counsel failed to present alternative theories for the motivation behind the shootings. Foster's motion includes a suggestion that Smith could have acted alone because he disapproved of any relationship between his family members and the victims.

As this court concluded on direct appeal, "[b]ased on the evidence at trial, the jury could conclude that Foster committed the shootings alone, that Smith committed the shootings alone, that Smith and Foster committed the shootings together, or that neither Foster nor Smith committed the shootings."[26] Foster's claim does not establish any prejudice, because the jury was presented with these alternate theories. The jury weighed these competing conclusions based on the evidence and determined that Smith and Foster committed the shootings together. This claim is without merit.

### (e) Failure to Object to
### State's Comments

Foster alleged that trial counsel failed to object to questioning by the State, as well as comments made during closing argument, which Foster suggests gave the jury the impression that the burden of proof had shifted to Foster to prove his innocence.

[14] Contrary to Foster's claims, the trial court instructed the jury that "[t]he burden of proof is always on the State to prove beyond a reasonable doubt all of the material elements of the crime charged, and this burden never shifts." The trial court also instructed the jury that "[s]tatements, arguments, and questions of the lawyers . . ." are not evidence. We found on direct appeal that Foster had failed to establish the existence of an unreliable verdict.[27] Foster's postconviction allegations are too vague and conclusory to change this result. Absent

---

[26] *Foster, supra* note 1, 286 Neb. at 844, 839 N.W.2d at 800.

[27] See *Foster, supra* note 1.

evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.[28] These claims are without merit.

### (f) Failure to Object to or Request Limiting Instruction

Foster alleged that trial counsel failed to object every time the court gave the jury a limiting instruction regarding impeachment evidence during his cross-examinations. He also alleged that trial counsel failed to request a limiting instruction for each time the State impeached a witness with a prior inconsistent statement. Foster alleged that this "inherently prejudiced" his case.

Foster's claims are conclusory and unavailing. He did not identify the grounds on which trial counsel should have objected, why asserting numerous objections while questioning a witness would have been beneficial to his case, or what the court's ruling would have been had counsel objected. He also did not specify the testimony he is referring to. His allegations are therefore not sufficient to show how trial counsel's treatment of the court's limiting instruction would have changed the outcome of the trial. Foster did not make sufficient allegations of deficient performance or prejudice for these claims.

### (g) Failure to Preserve Error

Foster alleged that trial counsel failed to preserve error when he "failed to object to evidence and testimony that would have been potentially inadmissible in a separate trial." Although Foster did not specify which evidence trial counsel failed to object to, and did not allege how such objections would have changed the outcome of the trial, Foster appears to have reasserted his argument from direct appeal that he was prejudiced by having his case jointly tried with Smith's.

This court determined in Foster's previous appeal that a joint trial was appropriate because the charges against Smith

---

[28] *Cotton, supra* note 17.

and Foster stemmed from the same series of acts and would be proved by similar evidence. We found that many of Smith's statements were offered to prove his state of mind rather than the truth of the matter asserted, and therefore would have been admissible against Foster in a separate trial. Although we determined that Smith's testimony from a prior case about the fact that "gang members do carry guns and they do shoot them" would have been inadmissible in a separate trial, we determined that Smith's testimony was not prejudicial, because his statements were cumulative of other witness testimony.

Given that this issue was preserved and determined on direct appeal, there is no indication of deficient performance by trial counsel. This claim is without merit.

### (h) Failure to Object to Impeaching State's Own Witness

Foster alleged that trial counsel failed to object when the State improperly impeached its own witnesses. Foster did not specify at what point during the trial this occurred. However, he may be referring to the testimony of Martini Swift, Smith's cousin.

The record shows the State conducted witness preparation with Martini leading up to trial. Martini was subpoenaed for trial, but failed to appear and was taken into custody. When she testified, she did not remain consistent with her prior statements to police. Martini began her testimony stating that she did "not really" remember the night of the shootings. She then stated she witnessed Smith come into the Legion that night and offered a courtroom identification of Smith. Martini then denied being concerned about why Smith was at the bar that night, and stated she did not know how long he stayed at the bar. She denied seeing someone else enter the bar with Smith. The State then impeached Martini with her statement to police that she observed Smith walk into the Legion with a "light-skinned boy with braids who was wearing a gray hoodie."

Contrary to Foster's allegation, the record shows Foster's trial counsel did object on improper impeachment grounds and was

granted a continuing objection throughout Martini's testimony. The trial court overruled the objection, finding that Martini was a hostile witness under Neb. Rev. Stat. § 27-611 (Reissue 2016) and that the testimony was permissible as long as the questions were confined to Martini's prior statements in a police report, rather than Martini's conversations with the prosecutor. The record thus disproves Foster's claim that his trial counsel was deficient for failing to raise an objection. This claim of ineffective assistance of trial counsel is without merit.

### (i) Jury Instruction No. 9

Foster contends that his counsel was ineffective for failing to object to jury instruction No. 9, which stated: "The Defendant is presumed to be innocent. This presumption of innocence is evidence in favor of the Defendant and continues throughout the trial, until he shall have been proved guilty beyond a reasonable doubt."

Foster asserts that the final clause of the instruction created an inevitability that the jury "shall" find him guilty, contrary to the presumption of innocence. Foster alleges the instruction failed to conform to NJI2d Crim. 9.2, which states, in relevant part: "The defendant has pleaded not guilty. [The defendant] is presumed to be innocent. That means you must find [the defendant] not guilty *unless and* until you decide that the state has proved [the defendant] guilty beyond a reasonable doubt." (Emphasis supplied.)

The trial court overruled Foster's objection raised in his postconviction motion to instruction No. 9 and stated the language was proper and not prejudicial under *State v. Henry*.[29]

[15,16] In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.[30] All the jury instructions must be read together, and if, taken as a whole,

---

[29] *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016).

[30] *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017).

they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.[31]

We conclude that the court did not err in giving instruction No. 9. It is not error for a trial court to refuse to give a defendant's requested instruction where the substance of the requested instruction was covered in the instructions given.[32] Here, the substance of NJI2d Crim. 9.2 regarding a criminal defendants' presumption of innocence was covered in instruction No. 9. In *State v. Duncan*,[33] we approved of the district court's use of a preliminary and final jury instruction identical to the instruction used in this case and found such presumption-of-innocence instruction was an accurate statement of the law. Furthermore, in *Henry*,[34] we found that a criminal defendant's challenge to a jury instruction fashioned from NJI2d Crim. 9.2 was meritless. *Henry* is instructive here, because, even though the instruction in *Henry* included the phrase "'unless and until,'" the challenge was limited to the words "'and until,'"[35] similar to Foster's claim in this case. In considering the propriety of the instruction given, we applied well-established principles of law regarding jury instructions and found the instruction correctly stated the law regarding the presumption of innocence, adequately covered the issue, and was not misleading. Our precedent on this issue of law is controlling. Foster's allegations regarding jury instruction No. 9 lack merit.

### (j) "Mere Presence" Instruction

Foster alleged that trial counsel failed to request a "mere presence" jury instruction. Foster cannot claim his counsel was deficient by failing to request a "mere presence" instruction,

---

[31] *Id.*

[32] *State v. Quintana*, 261 Neb. 38, 621 N.W.2d 121 (2001); *State v. Hernandez*, 242 Neb. 78, 493 N.W.2d 181 (1992).

[33] *State v. Duncan*, 265 Neb. 406, 657 N.W.2d 620 (2003).

[34] *Henry, supra* note 29.

[35] *Id*. at 853, 875 N.W.2d at 391.

because the State's theory of the case was that Foster was the shooter and that Smith aided and abetted Foster. The jury was presented with evidence that Foster was directly involved in the shootings, and not "merely present." Therefore, even if the instruction had been requested, the "mere presence" instruction would not likely have been given, because the evidence did not support the giving of the instruction. This claim is without merit.

### (k) Request of Mistrial

[17,18] Foster contends that trial counsel's failure to seek a mistrial for any of the deficiencies just addressed was itself deficient and prejudicial. A motion for mistrial is properly granted in a criminal case where an event occurs during the course of trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[36] A defendant must prove that an alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice, in order for a motion for mistrial to be properly granted.[37]

We found no error warranting a mistrial and no deficiencies in the performance of trial counsel in failing to seek a mistrial. As a result, we reject the claim that counsel was deficient in failing to request a mistrial. Having discussed each of Foster's postconviction claims with respect to the performance of trial counsel, we determine that Foster's first argument fails to allege a meritorious postconviction claim and that the trial court did not err in declining to grant Foster an evidentiary hearing.

### 2. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Foster contends that his appellate counsel was ineffective for failing to raise on direct appeal (a) that the trial court overruled

---

[36] *McCurry, supra* note 30.

[37] *Id.*

his motion to sever; (b) that the trial court erred when it gave a limiting instruction each time Foster impeached a witness with prior inconsistent statements, but failed to give the same limiting instruction whenever the State impeached a witness with prior inconsistent statements; (c) that the trial court erred by allowing the State to impeach its own witness; (d) that the trial court erred by allowing the State to improperly shift the burden of proof to Foster when the State examined witnesses about Foster's lack of testing the physical evidence and when the State made improper comments suggesting Foster failed to bring forth sufficient evidence to prove his innocence during closing arguments; (e) that the trial court improperly instructed the jury on instruction No. 9; and (f) that the trial court did not instruct the jury on "mere presence."

[19,20] When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the *Strickland*[38] test.[39] If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue.[40] Much like claims of ineffective assistance of trial counsel, the defendant must show that *but for* counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different.[41]

### (a) Failure to Sever

In regard to the trial court's failure to sever Foster's case from Smith's, that issue was raised by appellate counsel on direct appeal and we found that the trial court did not err in failing to sever the trials. This claim is without merit.

---

[38] *Strickland, supra* note 12.

[39] *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018).

[40] *Id.*

[41] *Id.*

### (b) Limiting Instruction

Foster claims that the trial court gave a limiting instruction each and every time he impeached a witness with prior inconsistent statements, but failed to give the same limiting instruction whenever the State impeached a witness with prior inconsistent statements. Having already determined above that Foster failed to show that his trial counsel's performance was deficient with respect to this issue, appellate counsel's failure to raise the issue on appeal was also not deficient. This claim is without merit.

### (c) Impeaching State's
### Own Witnesses

Foster alleged ineffective assistance of appellate counsel for failing to raise on direct appeal that the trial court erred by allowing the State to impeach its own witnesses. Again, Foster did not sufficiently plead this claim. He did not identify the witness' testimony that the trial court should have excluded, and therefore his allegations are insufficient to show ineffective assistance of appellate counsel for failing to include this issue on direct appeal. As discussed above, however, Foster is likely referring to the testimony of Martini.

Martini denied that anyone entered the bar with Smith, and the State impeached Martini with her prior statement that she observed Smith enter the bar with "a light-skinned boy with braids who was wearing a gray hoodie." Although Foster's trial counsel objected to the State's impeachment methods at trial, Foster's appellate counsel did not assign as error on direct appeal the trial court's decision to overrule the objection.

[21,22] Generally, the credibility of a witness may be attacked by any party, including the party who called the witness.[42] However, "'a party may not use a prior inconsistent statement of a witness under the guise of impeachment for the *primary purpose* of placing before the jury substantive

---

[42] Neb. Rev. Stat. § 27-607 (Reissue 2016); *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015).

evidence which is not otherwise admissible.'"[43] In *State v. Dominguez*,[44] we articulated that the scope of § 27-607 is limited where a party knows or should know that its witness will not testify consistent with the witness' prior statement and utilizes impeachment as "'"'mere subterfuge."'"

Martini initially established facts relevant to the prosecution without any reference to her prior statement. She placed Smith at the bar on the night of the shootings and identified Smith in court. When Martini failed to admit that Foster was with Smith at the Legion, this created a credibility issue concerning Martini's memory. The State then impeached Martini with her prior statement that Smith walked into the Legion with a person who matched the description of Foster. The prosecutor stated in her offer of proof, that "when I called her today, I had information that I believed based upon what she had expressed to me before, she would testify to today and she's not doing so. So the State did not call her with the intention of impeaching her."

Foster's postconviction allegations fail to establish that the State knew Martini would provide inconsistent testimony, that the State called Martini for the primary purpose of placing her prior statement before the jury, or that Martini's prior statement was otherwise inadmissible. Rather, the evidence suggests the prosecution called Martini because she saw Smith and Foster at the Legion on the night of the shootings. The evidence was not prejudicial, because it was cumulative of other testimony that Smith was with Foster at the Legion prior to the shootings. This claim is without merit.

### (d) Prosecutorial Misconduct

Foster alleged ineffective assistance of appellate counsel for failing to raise on direct appeal that the trial court erred "by

---

[43] *Dominguez, supra* note 42, 290 Neb. at 490, 860 N.W.2d at 745, quoting *State v. Boppre*, 243 Neb. 908, 503 N.W.2d 526 (1993) (emphasis supplied).

[44] *Id*. at 491, 860 N.W.2d at 746, quoting 4 Michael H. Graham, Handbook of Federal Evidence § 607:3 (7th ed. 2012).

allowing the State to improperly shift the burden of proof" to Foster on two instances: (1) when the State examined witnesses about Foster's lack of testing the physical evidence and (2) when the State made "improper comments suggesting [Foster] failed to bring forth sufficient evidence to prove his innocence" during closing arguments. Foster did not sufficiently allege this claim. Foster did not identify the witnesses and their testimony or the improper comments that the trial court should have excluded or corrected, and therefore, his allegations are insufficient to show ineffective assistance of appellate counsel for failing to include these issues on direct appeal.

There is not a reasonable probability that inclusion of this issue would have changed the result of the appeal. As discussed above, the trial court instructed the jury that the burden was on the State to prove Foster guilty beyond a reasonable doubt, and that "[s]tatements, arguments, and questions of the lawyers . . ." are not evidence. There is no indication that the jury did not follow these instructions. Foster's claims are without merit.

(e) Jury Instruction No. 9

Foster alleged ineffective assistance of appellate counsel for failing to raise on direct appeal that jury instruction No. 9 was improper. We discussed the merits of this issue above. Foster cannot show a reasonable probability that inclusion of this issue on direct appeal would have changed the result of that appeal. This claim is without merit.

(f) Jury Instruction on
"Mere Presence"

Foster alleged ineffective assistance of appellate counsel for failing to raise on direct appeal that the trial court failed to instruct the jury on "mere presence." We discussed the merits of this issue above. Foster cannot show a reasonable probability that inclusion of this issue on direct appeal would have changed the result of that appeal. This claim is without merit.

### (g) Denial of Evidentiary Hearing

Foster's final argument is that the court abused its discretion in denying an evidentiary hearing under § 29-3001 and that his postconviction counsel failed to object to the court's denial of an evidentiary hearing. Additionally, Foster alleges that he was in the wrong place at the time, that there was no physical proof that he was the one who committed the crime, and that his trial counsel failed to call witnesses to show what actually occurred.

As has been demonstrated above, our inquiry is focused on whether Foster has made a sufficient showing under *Strickland* that his counsel's performance was deficient and that he suffered prejudice as a result.

Assuming that postconviction counsel failed to object to the court's denial of an evidentiary hearing, there is no indication that the counsel's failure to lodge the objection had any impact on the case. After the district court entered the order dismissing the matter, Foster filed his own motion for reconsideration and had an opportunity to raise his claims and have them reviewed by the district court. As a result, Foster cannot show prejudice by his counsel's failure to object to the dismissal.

In regard to Foster's claim that there was no physical proof he was the one who committed the crime and that he was in the wrong place at the wrong time, these claims lack the specificity required to meet his burden and establish meritorious entitlement to a hearing under § 29-3001. We therefore affirm the denial of an evidentiary hearing on Foster's motion for postconviction relief.

### V. CONCLUSION

For the foregoing reasons, we affirm the order of the district court denying Foster's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.

HEAVICAN, C.J., not participating.