Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/13/2021 08:12 AM CDT

State of Nebraska, appellee, v.
Lucio P. Munoz, appellant.
___ N.W.2d ___

Filed May 21, 2021.    No. S-20-590.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Judgments: Appeal and Error.** Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.

3. **Postconviction: Constitutional Law: Proof.** A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.

4. **Effectiveness of Counsel: Proof.** In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense in his or her case.

5. **Effectiveness of Counsel: Presumptions: Proof.** The two prongs of the ineffective assistance of counsel test—deficient performance and prejudice—may be addressed in either order, and the entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable.

6. **Effectiveness of Counsel: Proof.** To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

7. **Postconviction: Constitutional Law: Proof.** An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.

8. **Postconviction: Effectiveness of Counsel: Records: Appeal and Error.** A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred where a defendant was represented by a different attorney on direct appeal than at trial and the alleged deficiencies in trial counsel's performance were known or apparent from the record.

9. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

10. **Postconviction: Effectiveness of Counsel.** To warrant an evidentiary hearing based on counsel's failure to make an alibi defense, the defendant must allege something more than the broad factual conclusion that there was some unspecified evidence that would have shown the defendant was not in the vicinity at the time of the crime.

11. **Postconviction.** In a motion for postconviction relief, a defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing.

12. ____. Absent specific allegations, a motion for postconviction relief effectively becomes a discovery motion to determine whether evidence favorable to a defendant's position actually exists.

13. **Rules of Evidence: Hearsay: Proof.** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

14. **Rules of Evidence: Hearsay.** Hearsay is not admissible unless otherwise provided for in the Nebraska Evidence Rules or elsewhere.

15. **Effectiveness of Counsel.** As a matter of law, counsel is not ineffective for not attempting to adduce inadmissible testimony.

16. **Appeal and Error.** Appellate courts do not generally consider arguments and theories raised for the first time on appeal.

17. **Postconviction: Appeal and Error.** In an appeal from the denial of postconviction relief, an appellate court will not consider for the first time on appeal claims that were not raised in the verified motion.

Appeal from the District Court for Scotts Bluff County: Andrea D. Miller, Judge. Affirmed.

Lucio P. Munoz, pro se.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## I. INTRODUCTION

The defendant appeals from the denial of postconviction relief without an evidentiary hearing. The defendant had presented four layered claims of ineffective assistance of counsel concerning the failure to investigate witnesses, make an alibi defense, present expert witness testimony, or move in limine to exclude statements. The district court found that the allegations presented no more than conclusions of fact and law that lacked the necessary specificity to warrant an evidentiary hearing.

## II. BACKGROUND

Following a jury trial, Lucio P. Munoz was found guilty of first degree murder and use of a deadly weapon to commit a felony in relation to the death of his girlfriend. He was sentenced to life for the murder conviction and a consecutive 20 to 40 years' imprisonment for the weapon conviction.

On direct appeal, we affirmed the convictions and sentences.[1] Munoz was represented by new counsel. Munoz subsequently filed a pro se motion for postconviction relief, which the district court denied without an evidentiary hearing. Munoz appeals.

### 1. Trial

The facts pertaining to the trial are fully set forth in our opinion in *State v. Munoz*.[2] We reiterate those facts that are most relevant to the postconviction motion.

[1] See *State v. Munoz*, 303 Neb. 69, 927 N.W.2d 25 (2019).

[2] *Id.*

The State presented evidence that at approximately 10 p.m. on December 30, 2016, Munoz reported to a neighbor in his apartment complex that his girlfriend had been raped. The police were called, and two officers arrived at approximately 11 p.m. The girlfriend, who was intoxicated and had been sleeping in Munoz' bedroom, did not know why the police had been called and refused to make a report.

At approximately 2 a.m. on December 31, 2016, Munoz called his son, stating he had done something bad and wanted to kill himself. The police were called and arrived around 3 a.m. at Munoz' apartment to check on him. Munoz said his girlfriend had gone home. The bedroom door was closed, and officers did not venture beyond it. Munoz went with the officers to a hospital after he locked his apartment door with a deadbolt.

Munoz left the hospital around 8 a.m. and went directly to his son's house. At some point, arrangements had been made for Munoz to visit his brother in Illinois. A friend drove him there that same day. Munoz did not stop at his apartment to retrieve any belongings.

A neighbor alerted the property manager on January 3, 2017, that she had not seen Munoz or the victim since December 30. The property manager used a master key to unlock the deadbolt and found the deceased victim on the bed in the bedroom.

An autopsy revealed the victim had suffered 37 stab wounds. She appeared to be wearing the same clothing that the officers' body cameras recorded her wearing on December 31, 2016. A sexual assault kit showed no DNA other than the victim's. The State's blood spatter expert described bloodstain patterns found at the scene, which indicated the brutal nature of the crime and that "[s]omebody with blood on them" had walked to the bathroom and washed it off. No forensic evidence was found that positively linked Munoz to the crime.

Munoz has a brother in Texas who began searching for Munoz due to a concern that "something had happened . . . where he live[s]." When the brother was able to reach Munoz,

Munoz asked him to forgive him and said he was going to die in prison.

After Munoz was located in another state, law enforcement was dispatched to transport him back to Nebraska. During the course of their travel, Munoz made several unsolicited comments to law enforcement, including that he was "going to get the death penalty."

## 2. Motion for Postconviction Relief

In his motion for postconviction relief, Munoz alleged that trial counsel was ineffective for failing to object to jury instructions and for failing to challenge jurors for cause. The district held that both of these allegations were procedurally barred for failing to raise such issues on direct appeal. In doing so, the district court stated, "When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record."

Munoz also raised in his motion several layered claims against appellate counsel.

### (a) Alibi and Flight Witnesses and Alibi Defense

First, Munoz alleged that trial counsel was deficient in failing to depose or interview potential witnesses Manuel Trevino and Jolene Condon before trial. Munoz stated that Trevino and Condon had knowledge of Munoz' "whereabouts." In a separate section presumably referring to these witnesses but never mentioning any witness by name, Munoz also broadly alleged that trial counsel was ineffective for failing to make an "alibi-defense" based on "proof that he was nowhere in the v[i]cinity or area" when the victim was murdered. Munoz generally asserted that appellate counsel rendered ineffective assistance in relation to these claims.

Munoz claimed Condon's testimony "would have presented an rebuttable presumption to the [S]tate's theory of how

[Munoz] allegedly murdered the victim" and "would have contradicted the [S]tate's evidence underlining proof of [Munoz'] alibi during the time of the victim's murder." He did not describe Condon's potential testimony in any further detail.

Munoz asserted Trevino had engaged in conversation with Munoz' son "instrumental to [Munoz'] desire to travel out of town during the time the alleged crime supposedly took place," which would have been "pivotal" "inasmuch that Trevino possess knowledge of the events unfolding that lead to [Munoz'] desire to travel, devoid of covering up, or having a scapegoat."

The district court denied Munoz' claims relating to Trevino and Condon on the grounds that Munoz had failed to assert "any specific allegations as to what testimony witnesses would have given" or "any exculpatory evidence that has been uncovered by the testimony." As to the separate alibi-defense claim, the court found there were "no facts asserted showing who would be called as an alibi, what the alibi would testify and thus no showing of any exculpatory evidence."

### (b) Failure to Suppress Statements

Second, Munoz asserted that trial counsel was ineffective by failing to suppress his "statements." He generally asserted that appellate counsel rendered ineffective assistance in relation to this claim. Munoz did not elaborate in the motion as to what statements he was referring to or the reason why his statements were allegedly inadmissible. In denying the claim without an evidentiary hearing, the district court observed, "There are no facts asserted showing any statements of Munoz which would be suppressed and further no showing of any exculpatory evidence. This claim is not specifically argued in the pleading but stated."

### (c) Failure to Call Expert Witness
### on Blood Spatters

Third, Munoz asserted that trial counsel was ineffective "by failing to call or interview an 'Expert Witness' to refute the

[S]tate's theory alleging the 'blood spattered' evidence was culpable proof of [Munoz'] guilt." He generally asserted that appellate counsel rendered ineffective assistance in relation to this claim.

This expert allegedly "would have been able to determine with professional certainty the time, day, and detailed involvement of the crime, particularly, the evidence DNA and other intricacies involving the murder of the victim." No other details were set forth in the motion for postconviction relief. The district court concluded that Munoz had failed to assert "any specific allegations as to what testimony witnesses would have given" or "any exculpatory evidence that has been uncovered by the . . . expert findings."

### (d) Motion in Limine

Fourth, Munoz alleged the ineffective assistance of appellate counsel for not preserving "the challenge of [Munoz'] motion in limine filed in the lower district court, thereby assigning such as error in [Munoz'] brief of appellant, for review." There was no description of the evidence subject to the motion in limine, why it was inadmissible, and how it prejudiced him. The district court found that the allegation did not warrant an evidentiary hearing because the postconviction motion alleged no specific statement or evidence that should have been included in the motion in limine.

### III. ASSIGNMENTS OF ERROR

In his appeal from the denial of his motion for postconviction relief, Munoz assigns as error that (1) trial and appellate counsel rendered ineffective assistance of counsel; (2) Munoz received "ineffective assistance via direct appeal review, in violation of the 5th, 6th and 14th Amendment to the United States Constitution, and Article I, §§ 3, 13 and 23 of the Nebraska Constitution"; and (3) trial counsel was ineffective by failing to object to the trial court's failure to properly prepare jury instructions in violation of "his 5th, 6th[,] 11 and 13 of Nebraska Constitution."

## IV. STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[3]

[2] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.[4]

## V. ANALYSIS

[3] A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.[5]

[4-6] In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*,[6] to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense in his or her case.[7] The two prongs of this test—deficient performance and prejudice—may be addressed in either order, and the entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable.[8] To show that counsel's performance was deficient, a defendant must

---

[3] *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021).

[4] *Id.*

[5] *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015).

[6] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[7] *State v. Stelly, supra* note 3.

[8] *Id.*

show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[9]

[7] An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.[10]

### 1. Assertions Against Trial Counsel and Separate Alibi-Defense Claim

In his appellate brief, Munoz makes several assertions against trial counsel that he argues the district court should have granted an evidentiary hearing on, but which Munoz fails to tie to any argument of ineffective assistance of appellate counsel. In this regard, Munoz asserts that he told trial counsel about his alibi that "he was nowhere in the v[i]cinity or area when [the victim] was murdered," yet trial counsel "prejudicially failed to give notice to the [S]tate prosecution and the court, pursuant to [Neb. Rev. Stat. §] 29-1927, as required." (Emphasis omitted.) Munoz also argues that trial counsel was ineffective by failing to object to jury instructions. With the exception of the alibi defense, these allegations were stated in the motion for postconviction relief directly against trial counsel only and were not presented as a layered claim against appellate counsel for failing to assert the ineffectiveness of trial counsel.

[8,9] A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred where a defendant was represented by a different attorney on direct

---

[9] *Id.*

[10] See, *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020); *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018).

appeal than at trial and the alleged deficiencies in trial counsel's performance were known or apparent from the record.[11] Further, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[12]

[10] We agree with the district court that the claims made directly against trial counsel only are procedurally barred. To the extent the claim regarding an alibi defense was a separate claim from the allegations regarding the potential testimony of Trevino and Condon, it was not argued on appeal as a layered claim and we therefore need not consider whether the court erred in denying such a claim. However, we also find that the broad allegation in the motion for postconviction relief that trial counsel was ineffective for failing to make an alibi defense constituted mere conclusions of fact and law without supporting facts, which did not warrant an evidentiary hearing. To warrant an evidentiary hearing based on counsel's failure to make an alibi defense, the defendant must allege something more than the broad factual conclusion that there was some unspecified evidence that would have shown the defendant was not in the vicinity at the time of the crime.[13]

## 2. Layered Claims

Munoz makes four general arguments of appellate counsel's ineffectiveness by failing to raise on direct appeal claims of ineffective assistance of trial counsel. These generally correspond to the four stated claims in his motion for postconviction relief.

### (a) Alibi and Flight Witnesses

We hold that Munoz' claims regarding the failure to depose or interview potential witnesses Trevino and Condon before

---

[11] *State v. Marshall*, 269 Neb. 56, 690 N.W.2d 593 (2005).

[12] *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019).

[13] See *State v. Davlin*, 277 Neb. 972, 766 N.W.2d 370 (2009).

trial failed to allege more than conclusions of fact and law and, to the extent the motion presented more specific facts, those facts, if proved, would not constitute an infringement of Munoz' constitutional rights rendering the judgment void or voidable. Thus, the district court did not err in denying the claims without an evidentiary hearing.

[11,12] Our case law is clear that in a motion for postconviction relief, a defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing.[14] Absent specific allegations, a motion for postconviction relief effectively becomes a discovery motion to determine whether evidence favorable to a defendant's position actually exists.[15]

Munoz' allegations as to Condon's testimony consist entirely of legal conclusions and conclusions of fact without supporting facts. Munoz alleged Condon's testimony "would have presented an rebuttable presumption to the [S]tate's theory of how [Munoz] allegedly murdered the victim" and "would have contradicted the [S]tate's evidence underlining proof of [Munoz'] alibi during the time of the victim's murder." This fails to satisfy the requirement that the motion include specific allegations regarding the testimony that the witness would have given if called.

Munoz' allegations regarding Trevino's potential testimony are somewhat more specific. In essence, Munoz alleged that Trevino could have testified that in a conversation with Munoz' son, Munoz' son reported to Trevino that Munoz had a "desire to travel out of town during the time the alleged crime supposedly took place." This was alleged to be relevant exculpatory evidence because it pertained to Munoz' "whereabouts

---

[14] *State v. Foster*, 300 Neb. 883, 916 N.W.2d 562 (2018), *disapproved on other grounds, State v. Allen, supra* note 10. See, also, e.g., *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018).

[15] *State v. Foster, supra* note 14.

during the time the victim was found." It was further alleged that Trevino's testimony was relevant to "the events unfolding that lead to [Munoz'] desire to travel, devoid of covering up, or having a scapegoat." From Munoz' arguments on appeal, it appears that the reference to Munoz' "desire to travel, devoid of covering up" was an assertion that Trevino's testimony would have been relevant to diminish the inference of guilt surrounding his flight to Illinois.

The alleged testimony as to Munoz' "whereabouts" was insufficiently specific to warrant an evidentiary hearing. And, regardless, Munoz' "whereabouts" when the victim was found would not have been exculpatory under the facts of this case, which indicated the victim had been murdered several days before.

Because Munoz failed to allege when the conversation about traveling to Illinois took place—specifically, whether it took place before the murder—the facts alleged are insufficient to demonstrate that, if true, Munoz' convictions were the product of ineffective assistance of counsel. A conversation taking place after the murder, in which Munoz indicated a "desire to travel," would only strengthen the inference of flight.

[13-15] Moreover, Trevino's potential testimony about such a conversation with Munoz' son would have been inadmissible hearsay.[16] Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.[17] Hearsay is not admissible unless otherwise provided for in the Nebraska Evidence Rules or elsewhere.[18] Trevino's testimony about what Munoz' son had said would have been to prove the truth of

---

[16] See *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018).

[17] *State v. Poe*, 292 Neb. 60, 870 N.W.2d 779 (2015). See, also, Neb. Rev. Stat. § 27-801(3) (Reissue 2016).

[18] *State v. Poe, supra* note 17. See, also, Neb. Rev. Stat. § 27-802 (Reissue 2016).

the matter that Munoz intended to go out of town. As a matter of law, counsel is not ineffective for not attempting to adduce inadmissible testimony.[19]

### (b) Expert Witness on Mental Stability

Munoz argues on appeal that the district court erred in dismissing a layered claim concerning trial counsel's alleged ineffectiveness in failing to call an expert witness to testify as to Munoz' mental stability during the time of the victim's death. He does not expand upon this assertion, and thus, it was insufficient because it failed to specifically allege what the testimony of potential expert witnesses would have been if the witness had been called at trial.

[16,17] Furthermore, this claim does not appear in Munoz' motion for postconviction relief. Appellate courts do not generally consider arguments and theories raised for the first time on appeal.[20] In an appeal from the denial of postconviction relief, we will not consider for the first time on appeal claims that were not raised in the verified motion.[21]

### (c) Expert Witness on Blood Spatters

We also agree with the district court that Munoz failed to allege more than mere conclusions of fact or law without supporting facts in relation to his layered claim that trial counsel was ineffective "by failing to call or interview an 'Expert Witness' to refute the [S]tate's theory alleging the 'blood spattered' evidence was culpable proof of [Munoz'] guilt." Munoz did not indicate whose "evidence DNA" he was referring to, how the exact time of the murder could be established by such an expert, what the professional certainty of the time of the

---

[19] See *State v. Allen, supra* note 10.

[20] *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015).

[21] See, *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018), *disapproved on other grounds, State v. Allen, supra* note 10; *State v. Harris*, 294 Neb. 766, 884 N.W.2d 710 (2016).

crime would be, or how it might have changed the result of the trial.

### (d) Motion in Limine

Lastly, Munoz argues on appeal that the district court erred in dismissing his claim that appellate counsel was ineffective "by failing to assert as error trial counsel's failure to file a Motion in Limine as asserted in ground two of his Motion for Postconviction Relief."[22] He generally asserts prejudice as a result, but does not describe the evidence he believes should have been the subject of the motion in limine, why it should have been excluded, and how the result at trial would have been different but for its admission.

It does not appear that this allegation was raised in the postconviction motion. In his motion for postconviction relief, Munoz described the ineffective assistance of appellate counsel as not preserving "the challenge of [Munoz'] motion in limine filed in the lower district court, thereby assigning such as error in [Munoz'] brief of appellant, for review." The failure to file a motion in limine is a different assertion than the failure to appeal the denial of a motion in limine made at trial.

In any event, the allegation in the motion for postconviction did not contain any description of the evidence subject to the motion in limine, why the evidence was inadmissible, and how it prejudiced him. We agree with the district court that the allegations did not warrant an evidentiary hearing, because the postconviction motion alleged no specific statement or evidence that should have been included in the motion in limine.

### VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court dismissing, without an evidentiary hearing, Munoz' motion for postconviction relief.

AFFIRMED.

---

[22] Brief for appellant at 8.