766 N.W.2d 370 (2009)
277 Neb. 972
STATE of Nebraska, appellee,
v.
Clifford J. DAVLIN, appellant.
No. S-08-969.
Supreme Court of Nebraska.
June 19, 2009.
*374 Clifford J. Davlin, pro se.
Jon Bruning, Attorney General, and Kimberly A. Klein, Lincoln, for appellee.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
Clifford J. Davlin was convicted of second degree murder and first degree arson in 2000. On appeal, this court affirmed Davlin's conviction for arson, but reversed his murder conviction.[1] Following a retrial, Davlin was again convicted of second degree murder. This court affirmed that conviction in 2006.[2] Davlin filed a motion for postconviction relief, which was denied by the district court without an evidentiary hearing. Davlin appeals. We affirm.

FACTUAL BACKGROUND
The facts of this case were set forth in our decision in Davlin's appeal of his first conviction:
Tamara Ligenza, also known as Tamara Martin, was found dead in her Lincoln apartment after a fire on September 7, 1993. Ligenza was legally blind and was 6 months pregnant at the time of her death. Ligenza had been living with Davlin, but on September 6, Ligenza told Davlin to leave the apartment.... Davlin remained at or near the apartment building on September 6 and into the morning of September 7.
Ligenza was last seen alive, by her roommate, at about 1 a.m. on September 7, 1993. Ligenza lived in a house that had been converted to a duplex with one entrance that led to both apartments. Witnesses who lived in the building testified that they were awakened at approximately 4:30 a.m. by reports of a fire in the building. Davlin was identified as being in the duplex at the time of the fire, staying in the other apartment. *375 Firefighters removed a severely burned body from the bedroom of Ligenza's apartment; the body was later identified by dental records as Ligenza's. An autopsy was performed, and the coroner's physician concluded that Ligenza had been killed by manual strangulation prior to the fire.[3]
Davlin was originally charged in 1997 with first degree murder and arson in connection with Tamara Ligenza's death. Davlin was found guilty of second degree murder and arson in 2000. On appeal, this court reversed Davlin's conviction for second degree murder, but affirmed Davlin's arson conviction. We further noted that the State was prohibited on double jeopardy grounds from retrying Davlin on first degree murder charges.
The State then filed an amended information against Davlin on April 12, 2002, charging Davlin with second degree murder. Several pretrial motions were denied, including a motion to quash and a plea in bar. Eventually, Davlin was retried and was convicted of second degree murder. The district court sentenced Davlin to life imprisonment, to be served consecutively to his sentence of 20 to 60 years' imprisonment for arson. Davlin appealed.
Davlin was represented by different counsel on appeal. In that appeal, this court affirmed Davlin's conviction and sentence on August 4, 2006. On September 26, Davlin filed a pro se motion for postconviction relief. Davlin subsequently filed an "addendum" motion for postconviction relief, followed by a second amended motion for postconviction relief. The district court denied Davlin relief without an evidentiary hearing, concluding:
There has been no showing of factual allegations which, if proved, constitute an infringement of [Davlin's] constitutional rights so as to render his conviction void or voidable. With respect to [Davlin's] allegations of ineffective assistance of counsel, there has been no showing that the performance of [Davlin's] trial [or his appellate counsel] was in any way deficient or, even if any deficiency does exist, that such a deficiency prejudiced [Davlin].
(Alteration in original.)
Davlin, still acting pro se, appeals.

ASSIGNMENTS OF ERROR
On appeal, Davlin generally assigns that the district court erred by not granting him an evidentiary hearing and by denying him postconviction relief. In his brief, Davlin argues, restated, that his appellate counsel was ineffective for failing to allege the following instances of ineffective assistance of trial counsel: (1) failure to present evidence regarding Davlin's defense that Ligenza was alive when the fire was set, (2) failure to adequately cross-examine Keri Dugan, (3) failure to adequately impeach the testimony of Wade Potter, and (4) failure to object to the district court's failure to file its jury instructions prior to reading them to the jury. In his fifth and final assignment of error, Davlin assigns that his trial counsel was ineffective for failing to request a continuance so that certain witnesses from his first trial could be located and subpoenaed to testify at his second trial or to have those witnesses' testimonies from his first trial read into evidence at the second trial. This final assignment of error was raised on direct appeal, but this court declined to address it.

STANDARD OF REVIEW
Appellate review of a claim of ineffective assistance of counsel is a mixed *376 question of law and fact.[4] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.[5] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in Strickland v. Washington,[6] an appellate court reviews such legal determinations independently of the lower court's decision.[7]

ANALYSIS
On appeal, Davlin contends the district court failed to find that either his trial counsel or his appellate counsel was ineffective in several particulars. In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel at trial or on direct appeal, the defendant has the burden, in accordance with Strickland,[8] to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[9] Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.[10] In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[11] The two prongs of this test, deficient performance and prejudice, may be addressed in either order.
In determining whether a trial counsel's performance was deficient, there is a strong presumption that such counsel acted reasonably.[12] When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel.[13]
In this case, in addition to arguing that his trial counsel was ineffective, Davlin also argues that appellate counsel was ineffective for failing to raise the ineffectiveness of his trial counsel. When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. That is, courts begin by assessing the strength of the claim appellate counsel failed to raise.[14] Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.[15] When, as here, the case presents layered ineffectiveness claims, we determine the prejudice prong of appellate counsel's performance by focusing on whether trial counsel was ineffective under the Strickland test.[16] If trial counsel was not ineffective, then the defendant suffered no prejudice when appellate *377 counsel failed to bring an ineffective assistance of trial counsel claim.
If trial counsel was ineffective, then the defendant suffered prejudice when appellate counsel failed to bring such a claim. We must then consider whether appellate counsel's failure to bring the claim qualifies as a deficient performance under Strickland. In other words, we examine whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel.[17] If it was, then the defendant suffered ineffective assistance of appellate counsel. If it was not, then the defendant was not denied effective appellate counsel.

Failure to Pursue Defense That Ligenza Was Killed by Fire.
Davlin first assigns that his appellate counsel was ineffective for failing to allege the ineffectiveness of trial counsel in failing to pursue a defense that Ligenza was not killed by strangulation, but instead was killed by the fire. Davlin points to evidence that there was a 1.2 percent level of carbon monoxide in Ligenza's system at the time of her death. Davlin, relying on medical encyclopedias, argues that this level suggests Ligenza was alive at the time of the fire and that the carbon monoxide from the fire was the cause of her death, not any alleged strangulation by Davlin.
At trial, the State presented evidence from three pathologists suggesting that Ligenza was dead before the fire was set: in particular, the pathologists noted that Ligenza's muscle was its usual reddish-brown color, while Ligenza's dying in the fire would cause the muscle to be a different color, probably a cherry red. There was also testimony regarding the lack of soot in Ligenza's mouth or nose, the lack of a high level of carbon monoxide in her system, and a lack of vital response on Ligenza's skin. In addition, a burn specialist testified that Ligenza was not alive at the time of the fire, as evidenced by the lack of any evidence of inhalation of hot gasblistering of the mouth, swelling of the lips or tongue, and charring of the lips or the roof of the mouth.
Because of this overwhelming evidence that Ligenza was dead prior to the fire, we conclude that Davlin was not prejudiced by any failure of trial counsel to pursue Davlin's suggested defense. We further note that Davlin is essentially arguing that his trial counsel was ineffective for failing to pursue a defense that suggested Davlin did not strangle the victim, but instead set her on fire. We fail to see how Davlin could have been prejudiced by his trial counsel's failure to pursue such a theory.
Davlin was not prejudiced by any failure on the part of his trial or appellate counsel to raise this defense and was therefore not entitled to postconviction relief on this point. Davlin's first assignment of error is without merit.

Testimony of Keri Dugan.
In his second assignment of error, Davlin argues that appellate counsel erred in failing to raise on appeal the ineffectiveness of his trial counsel with regard to the cross-examination of Dugan, an acquaintance of Davlin.
Dugan testified for the State. On direct, Dugan was asked about the events preceding the fire in the early morning of Ligenza's death. Dugan testified that she went to visit Richard Guilliatt, who resided in an apartment in a duplex. (Ligenza resided in the other apartment in the duplex.) Dugan testified that after entering the apartment, she said hello to Davlin, who was in the apartment with Guilliatt. *378 In response to Dugan's greeting, Davlin replied, "`That bitch kicked me out.'"
On cross-examination, Dugan was asked about Davlin's apparently unsolicited statement about being "kicked out." Trial counsel had Dugan refresh her memory from police notes taken during the interview in the hours after the fire. Upon refreshing her recollection, Dugan then testified that at the time, she told the officer that she "just said hi [to Davlin], and that was it." The State then questioned Dugan on redirect, and asked whether in that interview the officer had specifically asked her whether Davlin had said anything to her. Dugan replied that the officer did not ask her that question, but that in fact, Davlin had said something to her, namely that the "`bitch kicked me out.'"
As we understand Davlin's argument on appeal, he contends appellate counsel was ineffective for failing to allege that trial counsel was ineffective in failing to object to Dugan's testimony, on redirect, that Davlin told her that the "bitch kicked him out." Davlin argues that allowing Dugan to testify to this a second time was unduly prejudicial.
Davlin's argument is without merit. Most, if not all, evidence is intended to be prejudicial; it is only that evidence which is unduly prejudicial that is inadmissible.[18] And this testimony was brief, was impeached by trial counsel (as having not been initially told to police), and, given the weight of the remaining evidence against Davlin, was not likely to have changed the results of the proceedings. We conclude that Davlin was not prejudiced by any alleged deficiency in trial counsel's performance and therefore was not prejudiced by appellate counsel's failure to raise this issue on direct appeal.
We additionally note Davlin appears to argue that trial counsel failed to effectively cross-examine Dugan with regard to prior statements made stating that everyone, including Davlin, was asleep when Dugan entered the apartment, and thus Davlin could not have told Dugan that Ligenza had "kicked him out." However, the district court was not presented with this allegation in any of Davlin's three motions for postconviction relief, and we need not address it here.
Finally, to the extent Davlin argues that his trial counsel was ineffective for failing to ask the district court to admonish the jury that Dugan was lying, such argument is without merit. It is the province of the fact finder, in this case the jury, to judge the credibility of a witness[19]; it would be improper for the trial court to suggest that a witness was not being truthful. As such, trial counsel could not have been ineffective in failing to ask for such an admonishment, nor could appellate counsel have been ineffective for failing to raise the issue on direct appeal.
Davlin's second assignment of error is without merit.

Testimony of Wade Potter.
Davlin next assigns that his appellate counsel was ineffective for failing to allege that trial counsel erred in his crossexamination of Potter.
Potter testified at trial that when he and Davlin were in the Sarpy County jail together, Davlin confessed to him that he, Davlin, killed Ligenza. Potter was cross-examined as to his motive for reporting this confession, his changing story, and his criminal record, but trial counsel did not attempt to impeach Potter's testimony by suggesting that Potter and Davlin were *379 not housed together at the Sarpy County jail. It is this omission which Davlin now argues was ineffective.
As an initial matter, we note that Davlin does not actually allege that he was not acquainted with Potter from the time spent at the Sarpy County jail, nor does he allege that the fact he and Potter were not housed together necessarily means the two had no contact. We thus question whether Davlin has alleged sufficient facts to support his claim of ineffective assistance of counsel. An evidentiary hearing on a motion for postconviction relief must be granted when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. However, if the motion alleges only conclusions of fact or law, or the records and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary hearing is required.[20]
But in any case, we note that in addition to Potter's testimony that Davlin confessed to killing Ligenza, three other witnesses also testified to the same. And these confessions were in addition to other evidence also supporting a finding of Davlin's guilt. We conclude that Davlin was not prejudiced by any alleged deficient performance with respect to Potter's cross-examination and that appellate counsel was not ineffective for failing to raise such issues on direct appeal. Davlin's third assignment of error is therefore without merit.

Failure to File Jury Instructions.
In his fourth assignment of error, Davlin contends that his appellate counsel erred in failing to allege the ineffectiveness of trial counsel in not objecting to the district court's failure to file jury instructions in compliance with Neb.Rev.Stat. § 25-1114 (Reissue 2008) and also in failing to object to the verdict and sentence rendered against him for the same reasons.
Section 25-1114 provides in part that jury instructions must be filed by the clerk before being read to the jury by the court. It is clear such did not occur in this case since, according to the record, the instructions were given to the jury on January 31, 2005, but not filed with the clerk until February 1.
Assuming Davlin is correct that his trial counsel's performance was deficient by his failure to object to the failure of the court to file the instructions, we conclude Davlin is unable to show that he was prejudiced by this failure. Specifically, Davlin contends he was deprived of his due process rights when the district court failed to file the instructions before instructing the jury. Beyond this general assertion, however, Davlin makes no specific argument about how he was harmed by this failure.
And indeed, it is clear that Davlin's due process rights were not violated by any failure to have the jury instructions filed prior to being read to the jury. A review of the record shows the district court held a jury instruction conference with Davlin, his counsel, and the prosecutor all present. Davlin's counsel fully participated in this conference. Davlin and his counsel were fully aware of all instructions prior to the time the instructions were given to the jury. Additionally, we note Davlin does not argue that any of those instructions were erroneous.
Davlin was not prejudiced by the failure of his counsel to object to the district court's failure to file the instructions with the clerk before reading them to the jury. As such, Davlin's appellate counsel was not ineffective for failing to raise the issue on direct appeal. We conclude that Davlin's fourth assignment of error is without merit.

*380 Failure to Produce Testimony of Certain Witnesses.

Finally, Davlin assigns that his trial counsel was ineffective for failing to subpoena and/or produce the testimony of two witnesses from the first trial. We note that these issues were raised by appellate counsel in Davlin's direct appeal, but that this court declined to reach the issue, given the state of the record before us.
Though it is not entirely clear from the record, apparently these witnesses Guilliatt and Lee Davisboth testified at Davlin's first trial. Davlin generally claims in his motion that Guilliatt and Davis would provide him with an alibi and would provide other exculpatory evidence. In his motion, Davlin also generally alleges that trial counsel was ineffective for failing to introduce Guilliatt's and Davis' testimonies from the first trial in lieu of live testimony at his second.
Davlin's first argumentthat trial counsel was ineffective with respect to his failure to subpoena and/or produce the testimony of Guilliatt and Davisis without merit. In fact, a review of the record demonstrates that trial counsel actually requested a continuance in order to attempt to locate the witnesses and had subpoenas issued which could not be served because the witnesses could not be located. We conclude that because trial counsel actually did what he is now accused of not doing, his performance could not have been deficient.
With respect to Davlin's other contentionthat trial counsel was ineffective for failing to introduce Guilliatt's and Davis' testimonies from Davlin's first trialwe conclude that Davlin has not alleged sufficient facts to entitle him to postconviction relief.
As is noted above, an evidentiary hearing on a motion for postconviction relief must be granted when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution; no such hearing is required where a motion alleges only conclusions of fact or law.[21]
In his motion, Davlin alleges the following:
Trial counsel provided ineffective assistance of counsel by not offering the sworn prior testimony of ... Davis and... Guilliatt if, in fact, witnesses Guilliatt and Davis [were] unavailable and in so doing failed to offer important exculpatory and alibi evidence. [Davlin] was prejudiced thereby and such error was not harmless beyond a reasonable doubt.
There is nothing in Davlin's motion (or indeed in the record) that would suggest the nature of the exculpatory evidence to which Guilliatt and Davis would testify. Nor is there any indication what alibi either might provide Davlin. Rather than providing any detail, Davlin alleges only conclusions of fact and law. Such are insufficient to support the granting of an evidentiary hearing. As such, Davlin's fifth and final assignment of error is without merit.

CONCLUSION
The decision of the district court denying Davlin's motion for postconviction relief should be affirmed.
AFFIRMED.
WRIGHT, J., participating on briefs.
NOTES
[1] State v. Davlin, 263 Neb. 283, 639 N.W.2d 631 (2002).
[2] State v. Davlin, 272 Neb. 139, 719 N.W.2d 243 (2006).
[3] State v. Davlin, supra note 1, 263 Neb. at 286-87, 639 N.W.2d at 638-39.
[4] State v. Lopez, 274 Neb. 756, 743 N.W.2d 351 (2008).
[5] Id.
[6] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[7] State v. Lopez, supra note 4.
[8] Strickland v. Washington, supra note 6.
[9] State v. Lopez, supra note 4.
[10] Id.
[11] Id.
[12] Id.
[13] Id.
[14] State v. Jackson, 275 Neb. 434, 747 N.W.2d 418 (2008).
[15] Id.
[16] Id.
[17] Id.
[18] See State v. Lee, 247 Neb. 83, 525 N.W.2d 179 (1994).
[19] See State v. Davis, 277 Neb. 161, 762 N.W.2d 287 (2009).
[20] State v. Jim, 275 Neb. 481, 747 N.W.2d 410 (2008).
[21] Id.