IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. PARNELL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

KEINALD V. PARNELL, ALSO KNOWN AS REGINALD V. PARNELL, APPELLANT.

Filed October 16, 2018.    No. A-17-1147.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Keinald V. Parnell, pro se.

Douglas J. Peterson, Attorney General, and, on brief, Sarah E. Marfisi for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Keinald V. Parnell appeals from the order of the district court for Douglas County, which denied his motion for postconviction relief without an evidentiary hearing. For the reasons set forth herein, we affirm.

## II. BACKGROUND

As recited in this court's memorandum opinion on direct appeal:

Parnell was charged with burglary, terroristic threats, first degree false imprisonment, two counts of use of a firearm to commit a felony, possession of a firearm by a prohibited person, and misdemeanor violation of a protection order. The State also alleged that Parnell was a habitual criminal. Parnell pled guilty to the violation of a protection order and proceeded to trial on the remaining six charges.

- 1 -

The evidence at trial showed that in the early morning hours of May 9, 2015, Parnell entered the house of his ex-girlfriend, Randie Frederick. Randie was not home, but her adult son, Dominic Frederick, was asleep in the living room. Dominic's two children, who also lived in the house, were not at home that night. Parnell brandished a knife and, Dominic later claimed, a gun, and forced Dominic to remain in the living room of the house until the morning hours. In the morning, Dominic's uncle came by the house after receiving no answer to phone calls to Dominic's cellphone. The uncle saw Dominic sitting on a couch inside the house and saw another figure in the house, but left without speaking to Dominic. Shortly thereafter, the Fredericks' next door neighbor saw a broken window on the Fredericks' house and called the police. Following the police's arrival, Dominic was able to safely exit the house and an hours-long standoff between Parnell and police ensued. Parnell was eventually apprehended in the attic of the house and arrested.

On the day of Parnell's arrest, police collected a knife and a glove from the Fredericks' home. Two days later, Dominic summoned the police back to his house to retrieve a second knife he claimed to have found in the attic. Eleven days later, police returned to the house with special equipment and located a gun in the basement drywall.

The jury found Parnell guilty of burglary, false imprisonment, and terroristic threats, and acquitted him of the three firearms charges.

The court ordered a presentence investigation and conducted an enhancement hearing. The court found Parnell to be a habitual criminal and sentenced him to 30 to 30 years for burglary, 30 to 30 years for terroristic threats, 30 to 30 years for false imprisonment, and one year for violation of a protection order. The court ordered that all four sentences be served concurrently and awarded Parnell credit for 327 days served.

*State v. Parnell*, No. A-16-354, 2016 WL 7209829 at *1 (Neb. App. Dec. 13, 2016) (selected for posting to court website).

On direct appeal, Parnell was represented by the same attorney that had represented him at trial. In the brief filed by his attorney, Parnell alleged that there was insufficient evidence to support his convictions for burglary, terroristic threats, and false imprisonment. He also alleged that he received excessive sentences for those three convictions. Although Parnell also submitted two pro se briefs on direct appeal, his arguments in those briefs either mirrored those asserted by his attorney or failed to comply with this court's rules, and we did not separately address them. This court affirmed, finding the evidence sufficient to support Parnell's convictions for burglary, terroristic threats, and false imprisonment and finding that the sentences imposed were not excessive. See *State v. Parnell, supra*.

On June 8, 2017, Parnell filed a pro se verified motion for postconviction relief. He set forth various claims of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, prosecutorial misconduct, trial court error, and actual innocence. On October 6, the district court entered an order, denying Parnell's motion for postconviction relief without an evidentiary hearing. We discuss the court's reasoning below as necessary to our resolution of the issues raised on appeal. Parnell subsequently perfected his appeal to this court.

## III. ASSIGNMENTS OF ERROR

Parnell asserts, restated, that the district court erred in failing to (1) conduct an evidentiary hearing on the allegations contained in his motion for postconviction relief, (2) address "the Confrontation Clause, Compulsory process and the Fourth Amendment," (3) address "the constitution [sic] right to a [s]peed[y] [t]rial violation in violation to due [p]rocess," (4) hold an evidentiary hearing on his claim that his counsel was ineffective because she had a conflict of interest, and (5) hold an evidentiary hearing on his claims of actual innocence, ineffective assistance of trial counsel, ineffective assistance of appellate counsel, prosecutorial misconduct, and misconduct by the trial judge. Brief for appellant at 2.

## IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Foster*, 300 Neb. 883, 916 N.W.2d 562 (2018).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). When reviewing a question of law, an appellate court resolves the question independently of the lower court's conclusion. *Id.*

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *Id.* When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion. *State v. McGuire, supra.*

## V. ANALYSIS

### 1. APPLICABLE LEGAL PRINCIPLES

Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018). In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Stricklin, supra.*

A trial court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *State v. Stricklin, supra.* If a postconviction motion alleges only conclusions of fact or law, or if the records and files in a case affirmatively show the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id.* In a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement

of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

As discussed further below, certain issues raised by Parnell in this postconviction appeal were or could have been litigated on direct appeal and are thus procedurally barred. However, because Parnell was represented by the same counsel at trial and on direct appeal, this is his first opportunity to raise issues of ineffective assistance of trial and appellate counsel. Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, when a defendant was represented by the same lawyer both at trial and on direct appeal, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief. *Id.*

A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *State v. Stricklin, supra.* To establish a right to postconviction relief because of counsel's ineffective assistance, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Foster*, 300 Neb. 883, 916 N.W.2d 562 (2018). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* To establish the prejudice prong of a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A court may address the two prongs of this test, deficient performance and prejudice, in either order. *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018).

Guided by the above principles, we address Parnell's assignments of error in this postconviction appeal.

## 2. EVIDENTIARY HEARING ON ALL CLAIMS

Parnell first asserts that the district court erred in failing to conduct an evidentiary hearing on the allegations contained in his motion for postconviction relief. In arguing this assignment of error, Parnell states that in his motion for postconviction relief he alleged "ineffective assistance of trial counsel, ineffective assistance of appell[ate] counsel, prosecutorial [m]isconduct, [t]rial [j]udge errors, and actual [i]nnocen[ce], that amounts to 93 errors that [were] committed before, during and after trial that is a miscarriage of justice." Brief for appellant at 12-13. Parnell cites various propositions of law in this section of his brief, making a number of vague and generalized arguments, and concludes that an evidentiary hearing was required on all claims set forth in his motion. He does not, however, specifically argue any of the claims on which he asserts he was entitled to an evidentiary hearing. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018). Further, a generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered. *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). Parnell's assertion that the court erred in failing to conduct an evidentiary hearing on the allegations contained in his motion for postconviction relief and his vague and generalized arguments in support of that

- 4 -

assertion are not sufficiently specific to be addressed by this court on appeal. However, to the extent that Parnell has provided more specific argument in support of his claims elsewhere in his brief, we address those arguments below.

### 3. WITNESSES AND MOTION TO SUPPRESS

Next, Parnell asserts that the district court erred in failing to address "the Confrontation Clause, Compulsory process and the Fourth Amendment." Brief for appellant at 2. More specifically, he argues that his trial counsel was ineffective in failing to call certain witnesses and in failing to file a motion to suppress.

### (a) Failure to Call Witnesses

On appeal, Parnell asserts that his trial counsel was ineffective for failing to call the following witnesses: Officer Andrew Passo, Anthony Warner, Danny Barfield, Lisa Estrada, Joe Choquette, and a DNA expert. The Nebraska Supreme Court has upheld dismissal without an evidentiary hearing of claims that trial counsel was ineffective for failing to call particular witnesses, where the defendant's postconviction motion did not include specific allegations as to the testimony those witness would have given if called to testify at trial. See *State v. Foster*, 300 Neb. 883, 916 N.W.2d 562 (2018); *State v. McGhee*, 280 Neb. 558, 787 N.W.2d 700 (2010); S*tate v. Davlin*, 277 Neb. 972, 766 N.W.2d 370 (2009).

> [I]n a motion for postconviction relief, a defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing. Absent specific allegations, a motion for postconviction relief effectively becomes a discovery motion to determine whether evidence favorable to a defendant's position actually exists

*State v. Foster*, 300 Neb. at 893, 916 N.W.2d at 573-74. As discussed below, Parnell is not entitled to an evidentiary hearing on this issue because his vague descriptions of witness testimony fail to allege facts that, if proved, would constitute a violation of his rights. Further, he has not shown how the result of the trial would have been different had these witnesses been called.

### (i) Warner

In his motion for postconviction relief, Parnell alleged that Warner would have verified Parnell's employment and testified that Parnell "constantly loaned [the] victim's mother money." At trial, the victim testified that Parnell held him at knife point in order to collect money from the victim's mother. Testimony from Warner that the victim's mother owed Parnell money would not have been helpful to Parnell and it would have been cumulative to the victim's testimony. Testimony regarding Parnell's employment would not have been particularly relevant to the charges at issue. Parnell has not shown how the result of the trial would have been different had his attorney called Warner as a witness. The record affirmatively refutes Parnell's claim that he was prejudiced by his trial counsel's failure to call Warner as a witness at trial.

### (ii) Barfield

In his postconviction motion, Parnell asserted that Barfield would have verified that Parnell worked for him and would have testified as to "what kind of person [Parnell] was." Again, evidence regarding Parnell's employment would not have been relevant to the charges at issue. To the extent Parnell suggests that Barfield would have offered some testimony of his character, Parnell has not alleged what that testimony would have been or how it would have been relevant to the issues at trial. Parnell has not shown that there is a reasonable likelihood that the result of the proceedings would have been different if his attorney had called Barfield as a witness.

### (iii) Estrada

In his motion, Parnell asserted that Estrada would have testified as to the character of the victim and the victim's mother's character and would have been able to "clarify that Victim and his Mother lie on people for personal gain and that Victim's mother is known to use men for there [sic] money and then get them falsely accused of crimes and put into prison."

At trial, Parnell's attorney cross-examined the victim thoroughly and asserted in closing arguments that the victim was a "liar." Assuming the proposed character evidence from Estrada set forth in Parnell's postconviction motion would have been admissible at trial, the proposed evidence does not add any new facts regarding the underlying details of the crimes with which Parnell was charged. His attorney presented the jury with the theory that the victim was not a credible witness. Parnell has not shown a reasonable probability that the result of the proceeding would have been different if his attorney had presented the testimony from Estrada set forth in his motion for postconviction relief.

In his brief on appeal, Parnell also asserts Estrada would have testified that she was with Parnell until 5 a.m. the day of the burglary and that he did not "have a firearm on him." Brief for appellant at 17. Because this particular allegation was not contained in Parnell's postconviction motion, we do not consider it. See *State v. Torres*, 300 Neb. 694, 915 N.W.2d 596 (2018) (appellate court will not consider question not presented to district court for disposition through defendant's motion for postconviction relief).

### (iv) Passo

In his postconviction motion, Parnell asserted that Passo would have testified that he saw Parnell smoking a cigarette and that this testimony "would have added more reasonable doubt to the prosecution[']s case that [Parnell] had a knife in one hand and gun in the other." However, at trial, Parnell's attorney cross-examined the victim in detail regarding his claim that Parnell held both a knife and a gun at the same time. The jury acquitted Parnell of the use of a deadly weapon (firearm) to commit a felony charges, apparently rejecting the victim's assertion that Parnell held a firearm. The rejection of this assertion does not preclude the possibility that Parnell used a knife during the events in question. Any testimony by Passo that Parnell held a cigarette does not automatically conflict with the victim's testimony that Parnell held him at knife point. Parnell cannot show prejudice from his attorney's failure to present the proposed testimony from Passo.

*(v) Choquette and DNA Expert*

Finally, in his postconviction motion, Parnell alleged that his trial counsel was ineffective for failing to call Choquette and a DNA expert as potential witnesses, but he did not allege what their testimony would have been or explain how testimony from these two witnesses would have helped his case. Because Parnell's motion did not include specific allegations as to the testimony these witnesses would have given if called at trial, an evidentiary hearing was not required. See *State v. Foster*, 300 Neb. 883, 916 N.W.2d 562 (2018).

(b) Failure to File Motion to Suppress

In connection with his second assignment of error, Parnell also argues that his trial counsel was ineffective for failing "to even object to the illegal search and to move to suppress the knife that was found by the victim . . . in the attic." Brief for appellant at 18. The district court rejected this claim raised by Parnell in his postconviction motion, finding Parnell would not have had standing to challenge the search because the residence in question belonged to the victim, who gave law enforcement permission to enter the premises. We agree.

Before a party may challenge a search without a warrant, he or she must have standing in a legal controversy. *State v. Abu-Serieh*, 25 Neb. App. 462, 908 N.W.2d 86 (2018). "Standing" means that a person has a sufficient legally protectable interest which may be affected in a justiciable controversy, entitling that person to judicial resolution of the controversy. *Id.* A "standing" analysis in the context of search and seizure is nothing more than an inquiry into whether the disputed search and seizure has infringed an interest of the defendant in violation of the protection afforded by the Fourth Amendment. *State v. Abu-Serieh, supra.*

Ordinarily, two inquiries are required to determine whether an individual may make a challenge under the Fourth Amendment. *State v. Abu-Serieh, supra.* First, an individual must have exhibited an actual (subjective) expectation of privacy, and second, the expectation must be one that society is prepared to recognize as reasonable. *Id.* An individual may demonstrate infringement of his or her own legitimate expectation of privacy by showing that he owned the premises or that he occupied them and had dominion and control over them based on permission from the owner. *State v. McMillion*, 23 Neb. App. 687, 875 N.W.2d 877 (2016). Generally, a defendant must establish that he or she was legitimately on premises where a search occurs. See *State v. Van Ackeren*, 200 Neb. 812, 265 N.W.2d 675 (1978). Also, a warrantless search of a house may be justified when the police have obtained the consent to search from a party who possessed common authority over, or other sufficient relationship to, the premises sought to be inspected. *State v. Bowen*, 232 Neb. 725, 442 N.W.2d 209 (1989).

Here the knife was found in the home of the victim, who gave police permission to enter the premises. We agree with the district court that Parnell did not have standing to challenge the search and thus, any motion to suppress with respect to the knife would have been unsuccessful. Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018). Because this claim is affirmatively refuted by the record, it does not require an evidentiary hearing.

## 4. SPEEDY TRIAL

Parnell asserts that the district court erred in failing to address "the constitution [sic] right to a [s]peed[y] [t]rial violation [sic] in violation to due [p]rocess." Brief for appellant at 2. Any claims of trial court error could have been raised on direct appeal, but were not. Thus any such claims have been procedurally barred. See *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017). We also observe that a claim of a statutory speedy trial violation "in and of itself, would not be cognizable in a postconviction proceeding because it is not a constitutional right," but it can be "considered through the prism of an ineffective assistance of counsel claim." *State v. Lee*, 282 Neb. 652, 662, 807 N.W.2d 96, 105 (2011) (Nebraska Postconviction Act provides relief only for denial or infringement of constitutional rights and 6-month statutory speedy trial right is separate from constitutional speedy trial right). Although Parnell's third assignment of error and his arguments in support thereof are framed in terms of trial court error, in his fifth assignment of error, he asserts, among other things, that the court erred in failing to grant an evidentiary hearing on his ineffective assistance of counsel claims.

In Parnell's motion for postconviction relief, he asserted that his trial counsel failed to properly protect his speedy trial rights, and although his assertions are somewhat vague, it appears he asserted a failure to raise both his statutory and constitutional speedy trial rights. Specifically, Parnell asserted that his trial counsel was ineffective for failing to file a motion to discharge because "the indictment was under another name . . . and [Parnell] sat for 8 month[s] in [j]ail violating his speedy trial constitutional rights." He also asserted in his motion that his attorney was ineffective for failing to "litigate violation of speedy trial," that no pretrial motions were filed, "so no delays can be the case," and that the right to a speedy trial is "'fundamental' and is imposed by the Due [P]rocess clause of the Fourteenth Amendment of the United States." Although Parnell's constitutional reference was inaccurate, his motion contains references both to the constitution and to the time-frame relevant in a statutory speedy trial calculation. The district court rejected these claims without an evidentiary hearing, although it only specifically addressed the statutory speedy trial claim. We find that the court did not err in failing to grant an evidentiary hearing on either claim.

In a postconviction proceeding, when a defendant alleges that trial counsel failed to properly assert his or her speedy trial rights, the court must consider the merits of the defendant's speedy trial rights under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *State v. Lee, supra*. Only if a motion would have resulted in the defendant's absolute discharge, thus barring a later trial and conviction, could the failure to move for discharge be deemed ineffective assistance. *Id.* Because Parnell appears to argue that both his statutory and his constitutional right to a speedy trial were violated and because he also assigns error to the failure to hold an evidentiary hearing on his ineffective assistance of counsel claims, we have considered his arguments as allegations that his trial counsel failed to properly assert both his statutory and constitutional speedy trial rights.

With respect to Parnell's statutory speedy trial claim, the statutory right to a speedy trial is set forth in Neb. Rev. Stat. §§ 29-1207 and 29-1208 (Reissue 2016). *State v. Vela-Montes*, 287 Neb. 679, 844 N.W.2d 286 (2014). Section 29-1207(1) provides, "Every person indicted or

informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section." Section 29-1208 provides that if a defendant is not brought to trial before the running of the time for trial as provided for in § 29-1207, as extended by excluded periods, he or she shall be entitled to his or her absolute discharge from the offense charged and for any other offense required by law to be joined with that offense.

To calculate the deadline for trial for speedy trial purposes, a court must exclude the day the State filed the information, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4). *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018). In this case, the information was filed on June 29, 2015. Excluding the day the information was filed, counting forward 6 months, and backing up 1 day, the statutory speedy trial clock would have run on December 29, 2015, absent any excludable periods under § 29-1207(4).

With respect to excludable periods, § 29-1207 provides:

(4) The following periods shall be excluded in computing the time for trial:

(a) The period of delay resulting from other proceedings concerning the defendant, including, but not limited to, an examination and hearing on competency and the period during which he or she is incompetent to stand trial; the time from filing until final disposition of pretrial motions of the defendant, including motions to suppress evidence, motions to quash the indictment or information, demurrers and pleas in abatement, and motions for a change of venue; and the time consumed in the trial of other charges against the defendant;

(b) The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel. . . .

Here, there are two excludable periods relevant to our analysis.

The first excludable period was due to Parnell's request to continue a pretrial conference from August 19 until September 30, 2015. See *State v. Bridgeford*, 298 Neb. 156, 903 N.W.2d 22 (2017), *modified on denial of rehearing* 299 Neb. 22, 907 N.W.2d 15 (2018) (continuances of pretrial conferences are excludable from speedy trial clock from original date of pretrial conference to newly scheduled pretrial conference date). For speedy trial purposes, the calculation for a continuance begins the day after the continuance is granted and includes the day on which the continuance ends. *State v. Williams*, 277 Neb. 133, 761 N.W.2d 514 (2009). We calculate this period of excludible time to start on August 20, the day after the court entered the order granting the continuance and to end on the rescheduled conference date of September 30, resulting in 42 excludable days.

The second excludable period in this case was due to Parnell's motion for deposition filed on October 8, 2015, which was granted by the district court on October 30. The plain terms of § 29-1207(4)(a) exclude all time between the time of the filing of a defendant's pretrial motions and their final disposition, regardless of the promptness or reasonableness of the delay. *State v. Williams, supra*. The excludable period commences on the day immediately after the filing of a defendant's pretrial motion. *Id.* Final disposition under § 29-1207(4)(a) occurs on the date the motion is granted or denied. *State v. Williams, supra*. See *State v. Murphy*, 255 Neb. 797, 587 N.W.2d 384 (1998) (motion for deposition is "proceeding" under § 29-1207(4)(a) and time

required for its disposition is automatically excluded). The speedy trial clock was tolled for 22 days from October 9, the day after Parnell filed his motion for deposition, until resolution of that motion on October 30.

Adding the above 64 excludable days, the speedy trial clock would not have run until March 2, 2016. Parnell was tried on January 27-29 and February 1, 2016, well before the running of the speedy trial clock. Thus, any motion for discharge filed by his attorney on statutory speedy trial grounds would have been unsuccessful, and we need not address any additional motions which would have tolled the speedy trial clock. Because the record affirmatively refutes this claim of ineffective assistance of trial counsel, no evidentiary hearing was required. See *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018).

Turning to Parnell's constitutional speedy trial claim, a defendant has the right to a speedy trial under U.S. Const. amend. VI and Neb. Const. art. I, § 11. Determining whether a defendant's constitutional right to a speedy trial has been violated requires a balancing test in which the courts must approach each case on an ad hoc basis. *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017). This balancing test involves four factors: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *Id.* None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016). Rather, the factors are related and must be considered together with other circumstances as may be relevant. *Id.* In analyzing the prejudice factor of the four-factor test to determine whether constitutional speedy trial rights have been violated, the U.S. Supreme Court enumerated three aspects: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the defendant, and (3) limiting the possibility that the defense will be impaired by dimming memories and loss of exculpatory evidence. *Id.*

While Parnell's postconviction motion contains an allegation that the constitutional right to a speedy trial is "fundamental" and an assertion that there was some delay in bringing him to trial, which he argues on appeal was prejudicial, his allegations only amount to conclusions of fact or law and are not sufficient to warrant an evidentiary hearing on this claim.

## 5. CONFLICT OF INTEREST

Parnell asserts that the district court erred in failing to hold an evidentiary hearing on his claim that his counsel was ineffective because she had a conflict of interest. Parnell's claim of a conflict of interest is apparently based on the fact that he sought to represent himself at one point prior to trial, his attorney was allowed to withdraw and was appointed as legal advisor, and his attorney was subsequently reappointed to represent him after the State filed an amended information in the case.

Parnell filed a pretrial motion to represent himself, which was heard by the district court on January 14, 2016. The court advised Parnell of his right to be represented by an attorney and the risk in representing himself. The court then found that Parnell voluntarily, knowingly, and intelligently waived his right to counsel and could represent himself. The court granted the corresponding motion by Parnell's attorney to withdraw, but it appointed her as legal advisor to Parnell in this case.

Subsequently, the State filed a motion requesting leave to file an amended information, which was granted by the court. A preliminary hearing was held on the amended information. After the district court had stated on the record its findings and rulings regarding the preliminary hearing, Parnell advised the court that he no longer wished to represent himself. He asked that his standby counsel be reappointed to represent him in the scheduled jury trial, which motion was granted by the court. After the court reappointed Parnell's attorney to represent him, he was arraigned on the amended information, entering pleas of not guilty to the additional charges in the amended information.

In his motion for postconviction relief, Parnell alleged that his trial attorney was ineffective for "creating conflict and not with drawing [sic] for lack of communication with her client." He references discussion from the January 14, 2016, hearing, asserts that the court "still appointed her to my case when there was a conflict of interest," and alleges various work his attorney did not perform on his behalf. Finally, he stated, "There has been a[n] actual conflict which affected the attorney[']s performance." Elsewhere in his motion, Parnell asserted that his attorney admitted at the January 2016 hearing that she wanted to withdraw and that "[f]rom this moment there was a conflict that was never resolved." He also stated that his trial attorney was ineffective for failing to address her conflict of interest or bring it to the court's attention and that his attorney, who also represented him on appeal, "labored under a conflict of interest because she was [Parnell's] trial counsel and refused to raise claims of ineffectiveness of counsel against herself on direct appeal."

The right to effective assistance of counsel entitles the accused to his or her counsel's undivided loyalties, free from conflicting interests. *State v. Armstrong*, 290 Neb. 991, 863 N.W.2d 449 (2015). Whether a defendant's lawyer's representation violates a defendant's right to representation free from conflicts of interest is a mixed question of law and fact that an appellate court reviews independently of the lower court's decision. *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010). A conflict of interest which adversely affects a lawyer's performance violates the client's Sixth Amendment right to effective assistance of counsel. *State v. Sandoval, supra.* A conflict of interest must be actual rather than speculative or hypothetical before a conviction can be overturned on the ground of ineffective assistance of counsel. *Id.*

The phrase "conflict of interest" denotes a situation in which regard for one duty tends to lead to disregard of another or where a lawyer's representation of one client is rendered less effective by reason of his or her representation of another client. *State v. Ely*, 295 Neb. 607, 889 N.W.2d 377 (2017). The defendant who shows that a conflict of interest actually affected the adequacy of his or her representation need not demonstrate prejudice, but such conflict of interest must be shown to have resulted in conduct by counsel that was detrimental to the defense. *State v. Dunster*, 262 Neb. 329, 631 N.W.2d 879 (2001).

While Parnell makes statements showing his dissatisfaction with the work performed by his attorney, he has not asserted any facts showing an actual conflict of interest. Beyond Parnell's conclusory assertions of a conflict of interest, there have been no allegations that his trial counsel's loyalties were divided or tainted by conflicting interests. In his postconviction motion, Parnell only alleged conclusions of fact and law with respect to this issue, and the district court did not err in failing to hold an evidentiary hearing on this claim. See *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018).

## 6. ADDITIONAL CLAIMS

Finally, Parnell asserts that the district court erred in failing to hold an evidentiary hearing on his claims of actual innocence, ineffective assistance of trial counsel, ineffective assistance of appellate counsel, prosecutorial misconduct, and misconduct by the trial judge.

### (a) Claims Procedurally Barred

Since Parnell was represented by the same attorney at trial and on direct appeal, this postconviction action is Parnell's first opportunity to raise issues of ineffective assistance of counsel. However, as determined by the district court, Parnell's claims of prosecutorial misconduct and trial judge misconduct are procedurally barred because they could have been brought on direct appeal. See *State v. Stricklin, supra*. Parnell's arguments to the contrary are without merit.

### (b) General Arguments of Ineffective Assistance

In arguing his fifth assignment of error, Parnell points out that no claims of ineffective assistance of counsel were raised on direct appeal, but he presents no specific arguments showing why any of the particular claims of ineffective assistance of trial and appellate counsel raised in his postconviction motion required an evidentiary hearing. He argues that his trial counsel failed to identify and call witnesses who could have exonerated him, but he does not present any additional argument identifying specific witnesses and particular testimony beyond that discussed above in connection with his second assignment of error. Parnell argues that he alleged facts in his postconviction motion sufficient to "generate a justiciable issue concerning whether his trial counsel's performance was constitutionally deficient in several respects [sic] 29 claims." Brief for appellant at 30. However, as with Parnell's other arguments about ineffective assistance of counsel in support of his fifth assignment of error, his generalized argument, as well as the language used in the fifth assignment of error itself, is vague and not specific enough to advise this court of the issues to be considered on appeal. Accordingly, we do not address these arguments further. See, *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court); *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014) (generalized and vague assignment of error that does not advise appellate court of issue submitted for decision will not be considered).

### (c) Jury Instructions

In connection with his fifth assignment of error, Parnell urges this court to address an issue of plain error with respect to certain jury instructions. Specifically, Parnell argues that he was prejudiced by an error in jury Instructions Nos. 4 and 7 regarding use of a deadly weapon (firearm) to commit a felony. Pursuant to these instructions, the jury could find Parnell guilty of the use of a deadly weapon counts if they found, among other things, that he intentionally used a firearm to commit the felonies of first degree false imprisonment and terroristic threats, respectively. While the jury found Parnell guilty of the underlying felonies, he was acquitted of the use of a weapon charges. Even if there were some error in these jury instructions, Parnell cannot show prejudice resulting from either his trial attorney's or the court's failure to correct such an error because he

was acquitted of these crimes. Parnell attempts to argue that his acquittal on the use of a weapon charges undercuts the sufficiency of the evidence to support the underlying felony charges. However, this court rejected Parnell's claim on direct appeal that the evidence was insufficient to support his convictions for terroristic threats and false imprisonment. See *State v. Parnell*, No. A-16-354, 2016 WL 7209829 (Neb. App. Dec. 13, 2016) (selected for posting to court website). Because those claims were litigated on direct appeal, we do not address them further here. See *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018) (motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal). Claims of insufficiency of evidence that were or could have been raised on direct appeal are procedurally barred from being raised in a postconviction action. *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016).

(d) Actual Innocence

Finally, Parnell argues that he is entitled to postconviction relief based on the claim of actual innocence raised in his motion. The essence of a claim of actual innocence is that the State's continued incarceration of such a petitioner without an opportunity to present newly discovered evidence is a denial of procedural or substantive due process. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018). The threshold to entitle a prisoner to an evidentiary hearing on a postconviction claim of actual innocence is extraordinarily high. *Id.* Such a petitioner must make a strong demonstration of actual innocence, because after a fair trial and conviction, the presumption of innocence vanishes. *Id.*

The gist of Parnell's claim is that he is innocent because the victim lied in his testimony. Parnell's attorney raised the issue of the victim's credibility during cross-examination and in closing arguments at trial and to this court on direct appeal. In addressing Parnell's arguments with respect to the sufficiency of the evidence on direct appeal, this court rejected Parnell's challenge to the victim's credibility. *State v. Parnell, supra.* In his postconviction motion, Parnell rehashes his claims with respect to the victim's credibility and does not allege new facts amounting to a claim of actual innocence.

In rejecting Parnell's postconviction claim of actual innocence, the district court relied on *State v. Dubray, supra.* In that case, the Nebraska Supreme Court found that the defendant had not met the extraordinarily high standard as he presented no new facts supporting his claim of actual innocence. The court also noted that any claims of the defendant's innocence based on insufficiency of the evidence at trial were procedurally barred because they were or could have been raised on direct appeal. The court stated, "Merely attempting to relitigate issues decided at trial and affirmed on appeal does not make a viable claim of actual innocence." *State v. Dubray*, 294 Neb. at 948, 885 N.W.2d at 552. Similarly, in this case, Parnell has not met the extraordinarily high threshold of alleging facts sufficient to show his actual innocence, and his claims based on the insufficiency of the evidence at trial were previously litigated and are now procedurally barred. The district court did not err in denying an evidentiary hearing on this claim.

## VI. CONCLUSION

The district court did not err in denying Parnell's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.